Good morning. May it please the Court. My name is Dave Schoenfeld and I represent the appellant's Trishan Aircraft Company here. This case presents the classic insurance game of gotcha. An accident occurs. The owners tend to reclaim for the insurance company. The company pours over the background information about the pilots. The company notices that the second-in-command pilot, who bore no connection whatsoever to the accident, who had the indisputable training and skill necessary to protect against the very risks that the insurer here wanted to protect against, now gives the insurance company a wholesale excuse to deny all coverage for the accident on grounds he failed to have the exact literal training requirements to set forth in the policy. And even though the chief pilot had, in fact, met all those exact literal training requirements. Gotcha, says the insurance company. We don't have to pay your claim. If there's one thing that both parties are crystal clear on in this appeal is this, is that this case turns on whether an insurance policyholder must comply exactly and literally with every single condition in insurance policy, or whether, as the modern trend of contract law allows, the policyholder may prove policy compliance by showing that he or she substantially complied with the insurance policy. So the definitive word that you had in there is condition. And this was a warranty. So why should the cases, the precedent that talks about conditions, be applied when there's a warranty? I thought the cases treated the two differently. The cases don't treat the term warranty different than a condition. Warranty is, after all, a condition, and warranty arises in all different contexts of the law. There are warranties in the UCC. Well, let's talk about in the insurance context. Right. In the insurance context, you look in vain to find any distinction in the cases that say that there's a distinction between what a – some exalted standard about a warranty and an exalted – as opposed to a condition under the policy. Now, what the parties have been feuding about are these cases that date back going over, you know, a hundred years or more, involving what constitutes a promissory warranty and whether strict literal compliance is necessary for that, or whether substantial compliance is necessary. Now, the one thing that the – that Federal insurance can't escape is that there is language in those cases that does say that substantial compliance is allowable. That's one of the issues here about whether – whether those cases, you know, create such a distinction. But what there is no dispute, and we hear nothing about this from Federal, is any dispute about what modern contract law says. And if you read Mr. Williston, you read Mr. Corman, on contract law, it's clear that substantial compliance is allowed to be approved for compliance with any contract term. Well, isn't that what this Court held back in 1935? That's exactly right, Your Honor. Federal didn't like that case because it didn't cite California law, but it was within the trend, the modern trend. There's a California authority that says the trend began in 1924. But the only – interestingly enough, the only two decisions that speak about substantial compliance with insurance policies by this Court affirm our position and say that substantial compliance is allowed. In fact, to prove this point about substantial compliance being allowed and where the modern contract – whether the – how the modern trend of contract law goes, I'd urge the Court to take a look at page 24 of Federal's brief, because there is a long list of cases where they say that, oh, courts are all over the place in California about whether you comply – you have substantial compliance or not. They cite a number of cases that say there's strict compliance. If you look at every single one of those cases, every one of them except one, every one of those cases is where a statutory mandate imposed strict scrutiny, strict compliance. The only case that didn't was a 1948 case involving a real estate escrow case, and there the Court said that it was based on the cardinal principle of escrow – real estate escrow insurance law that mandated a strict compliance with the warranty. But there's no such thing as any strict compliance or strict – or cardinal principle in insurance law. Insurance law, as California's Supreme Court has said repeatedly, is something that you apply general principles of contract law and interpretation. Counsel, what about the cases specifically referring to pilot warranties? I'm sorry. To which case? Pilot warranties. Oh, pilot warranties, yes. The pilot warranty cases, interestingly enough, those cases do look at whether the pilots in question strictly complied with the warranty at issue. But it's no idle distinction to point out that every single one of those cases involved pilots at issue. And there was not a – what was not at issue in those cases, was not at issue, a search in vain for that, is the issue that's here, is may a court substitute substantial compliance for it? So you would agree – I mean, you would go so far as to say if this had been the main pilot, then the pilot warranty provision would preclude coverage? I could. And the reason why it's explainable under modern contract law. Modern contract law says, under substantial compliance tests – you can look at the Horn books and what they say on this – is that you have to see what – whether the party is looking for – is receiving the necessary and expected benefit under the policy. Now, does substantial compliance then apply in the context of pilot warranty? Do you have a case where that's been applied? No. There are no cases that talk about substantial compliance as such. And neither do Federal cases. Vis-a-vis a pilot warranty, do you have any cases where there has been substantial compliance analysis? No, I do not, Your Honor. There are no cases that address whether substantial compliance has been met at all. And there's no – none of those pilot cases address the issue particular to substantial compliance. But I'd wager this. If you look at the analysis in those cases, the essential and necessary benefits under the contract is that the pilot would meet the particular requirements listed. But that's not the issue in this case. The issue in this particular case is whether a second-in-command pilot – whether a second-in-command pilot needed to have that. And there's really two interesting pieces of evidence here that you don't have in those other cases. The one is with the underwriter. The underwriter in this case is an exchange of communication between the underwriter and the broker where the underwriter said, well, we'd be – we'd certainly consider alternate requirements here that could be met. And then there was an exchange of confusion. The policy got written. And, you know, that condition remained. But that signaled that – Here's the problem I have with your argument, is that that works fine as long as the copilot never has to take control of the planes. But if the copilot ever has to take control of the plane, then it's – the insurance company is justified in wanting to be ensured that any pilot who has the potential of taking control of the plane meets the same qualifications. And that's why I'm convinced that the pilot warranty cases are the way they are. They require strict compliance because of the very nature of the risk that's being borne by the insurance company. And it's just – the risk of harm is just as much of a potential for a copilot as it is for a pilot, because that's why the copilot is there in the event the copilot has to take over the plane.  And that very well may be the case. But that presumes whether you're looking at the facts under a substantial compliance test or whether a strict test. And with – Well, so far, I haven't seen a case in the pilot warranty context that applies substantial compliance. Your Honor, with all due respect, there is no such thing as an aviation exception to insurance law. There's no such thing as an aviation exception to modern contract law. Well, but there are cases that are interpreting the pilot warranty, and those cases all apply strict compliance. So unless you can show me a case in a pilot warranty context that applies substantial compliance, I'm persuaded that substantial compliance does not govern the strict warranty that's required in the pilot context. Well, in that case, then we would have a bona fide disagreement here. I didn't think that's what the cases of this circuit allow or the cases of modern contract law. Well, I'm just asking you to show me a case, because the cases I've read that deal with pilot warranties seem to have a strict compliance component to it. And you're telling me that substantial compliance should carry the day, and I'm asking you to show me a case where that analysis was in the pilot warranty arena. I can't show you such a case. But I can't either show you a case and neither can Federal show you a case where that analysis was employed within a substantial compliance context. And that's the issue in this appeal. Now, this is a wonderful discussion to have in the district court. And we can have the factual fight over whether Chuck Yeager would be an appropriate copilot here or not. No, but that's not the fight. The fight is whether or not the insurance language requires strict compliance. Regardless of who the pilot is, regardless of who the copilot is, the issue is whether or not the language in this insurance language is appropriate. And that's the issue. The issue here is whether or not the insurance policy had to be strictly complied with. I agree with one distinction. The issue here is what standard applies. That's the issue in this Court. What standard applies? Do we apply a strict reading statute, a strict and little requirement of promissory warranties and insurance contracts or not? I think we have to look at what the California courts have done. Well, I agree. And I think that the California courts have allowed proof of substantial compliance. And I think we're entitled to present that evidence to the district court. For a condition, but not a warranty. I don't agree that the cases have made or have allowed substantial compliance for a warranty. I think they have for a condition. Your Honor, the old cases are actually interesting. You have these cases from 1896. They don't go away just because time passed. No, they don't. Like Marbury v. Madison. That's right. And you have a very interesting warranty case there where you have the same exact literal requirement that the watchman has to be on the premises of the property to make sure that no fire occurs. He has to be there day and night observing it. Well, you have two cases. In one case, somebody lived 400 yards away. Another guy lived 65 feet away. But he said, hey, I live by the blacksmith shop, and so I can see the building. In one case, the court said that there's no coverage. In the other case, they said that there is. So I think courts in California are willing to look at evidence about substantial compliance. That's all we're asking here. We want an opportunity to present evidence of substantial compliance, and the district court did not do that. So it's a standard case there. Mr. Shanafelt, have the California State Appellate Courts ever rejected this court's decision in the California Cotton case back in 1935? No, Your Honor. They've had a few years to do that. Yes, Your Honor. And am I correct that that case applied California law, although they relied on, I believe, the Seventh Circuit case involving Indiana law and an Eighth Circuit case that was so old that it involved Indian Territory law? Correct, Your Honor. I'd like to make research and rebuttal. All right. Good morning, Your Honor. My name is Ralph LaMontagne, representing the defendant appellee in the Federal Insurance Company. Your Honor, I'll get to whether we should or shouldn't have substantial compliance in a moment, but I want to make a preliminary suggestion that it's irrelevant because they're not arguing substantial compliance in this case. They're arguing substantial equivalence, and there's a big difference. There were two requirements, two basic requirements that we have in this pilot warranty provision. One, you had to attend formalized training for the make and model aircraft within the preceding 18 months, and two, that training had to include the use of a flight simulator. Those are the two requirements. They haven't come up with anything that said they got substantially close to either of those. It is undisputed that this gentleman never once attended a single formalized training course for this aircraft in his entire life. Or for any aircraft manufactured by the same company. That's correct. And had never had any simulator time in his entire life. So this isn't a case where they're saying, well, you know what, we attended, you know, 20 months after rather than the 18th. We were close. No, they weren't close. It wasn't 20, 25, five years, nothing. Well, so counsel, do you concede that substantial compliance is the standard we should apply? Absolutely not. Most definitively not. That would make it much easier for us if you would concede that. I know it's late, Judge, and I like to make it easy. But I can't quite get myself there. I'm sorry. So in any event, what they're arguing is substantial equivalence, because they have people come in, they have experts come in, and say, well, you know what, okay, he didn't have this formalized training, and he's never been in a simulator in his life, but, God, he got some good training out of this good pilot here. And it was kind of just as good, although they really don't even quite go and say it was just as good. Because one of the reasons why my client has a simulator training requirement is because there are some emergencies that you can't practice in a regular airplane, because if you do, that airplane is going to come crashing through this cord rope. And no one wants to take that risk. So there are a lot of important emergency procedures that are undertaken in simulator training. He just didn't have any simulator training. That in and of itself, Your Honor, I think could be dispositive of this case. It doesn't have to be, but it certainly could be. Mr. LaMontagne, what do you suggest we do with this old 1935 case from the Ninth Circuit? What's your spin on it? A couple things, Your Honor. I just, nobody bothered, whoever counsel was for the insurer in that case, failed to cite to this court all the various preceding California Supreme Court cases that said strict compliance. Shame on them. They're probably dead now, so I can't really slap them on the wrist. But I just think that's what happened. There really is no analysis of the issue. There was. Our case law says if there is a precedent that has no analysis of the issue, we can disregard it. Right. And that's what happened. And there were a lot of preceding California Supreme Court cases that used very, very strict language. So, yes, we don't think that substantial compliance has any place here, Your Honor. As Your Honor correctly points out, every case in the country that has ever dealt with this issue has used strict compliance to analyze these cases. And we've had a lot of situations where you could argue this substantial equivalence. We had the Potter case from the Arizona Court of Appeals where they had a requirement for logged hours. And the undisputed evidence was, well, he didn't have logged hours, but he had actual time. He had floated. He just had written it in there. You know, come on. What's writing it in there mean? The court said, doesn't matter. It said log. The answer is log. You're out of court. We had one, the ideal case, where there was a requirement for 100 hours of retractable gear time. They showed he had 96.8. 3.2 hours short. And you can go on and on and on. I'm not going to waste the court's time with it because I've submitted all the cases in the brief. But the point is, unanimously throughout the country, pilot warranty provisions have been construed strictly, and there's a very good reason for that because of the risk that's involved. And that's right. And just to deal, if I might, with this idea about, well, it's only the second command. It must be remembered here, we're dealing with a jet aircraft that requires two pilots. So even though only one may have his hands on the control wheel at any given time, both have significant responsibilities as crew members and play an important role in the operation of the aircraft, and both simultaneously log the time as pilots. But there's no question that the main pilot was in control at the time of the accident. And, Your Honor, I mean, if you mean control by who physically had their hands on the control wheel, I agree with you. But in a sophisticated airplane like this, that's not all that's going on. You've got all these other instruments, you've got all these other radios. There are definitive roles that the copilot is also conducting and assuming. So you can't just say, well, okay, the copilot's there sort of to take over when something goes wrong. Absolutely not. So are you saying that one pilot, if God forbid something happened to the main pilot, the copilot could not pilot the aircraft alone? You could probably get it down. I'm not saying that it couldn't be done. I'm saying the FAA has determined that it's not safe to do that, that the aircraft is so complex that it needs two pilots to be there at all times in order for that aircraft to fly safely. There's no such thing as a one-pilot certified aircraft with the exception of a Cessna Citation. This was not, when you're talking about jets, this is not a Cessna Citation. It's a much more complex aircraft than that. And I would point out that even in the context of this particular operation, we're talking about a takeoff run that ended up off the end of the runway. Here the copilot had definite responsibility during the takeoff run. Sure, Mr. Michaels had his hand on the control wheel, but it was the copilot's call to call out what are known as V-speeds. And V-speeds are the various speeds that the aircraft gets to at which time the pilot reacts to that. One of those V-speeds is called VR, which means rotation speed. And so at VR, you pull back. Well, now if the V-speeds have been calculated incorrectly, or if the copilot calls out the wrong V-speed, you're in deep trouble. And what will frequently happen in that situation is the copilot or the pilot pulls back on the control wheel and nothing happens. Guess what? That's exactly what happened in this case. Now, they claim it's because of a defect in the aircraft. We think it may well have been a problem with the V-speeds calculations or call out, both of which are the responsibility of the copilot. It doesn't matter, of course, because causal connection is not required. That's been established. I believe Your Honor had a case holding out in the Pacific Fisheries versus HIH matter. So the idea that it's just, you know, one pilot doing everything and the other one sort of standing back to wait to see what happens, that's not the reality of what was going on in this cockpit. And that's why the insurers, they really care a lot about the qualifications of pilots. And I would point out that our underwriter specifically testified, if you would ask us to individually approve of this copilot, Mr. Piamarini, without having gone through this training class, we would have never done it. Because he only had 25 hours total flight time in the preceding four years. He had suffered a stroke and he had been, went from a flying career to a career as a yacht salesman for several years until he got his medical certificate back. So he had very, very, very little experience. And the comment earlier that this is gotcha, no, this isn't gotcha. This is a guy who didn't even come close to meeting the requirements under the policy. A policy which I would point out on this particular issue, the pilot warranty, was negotiated heavily back and forth. Unfortunately, the real culprit in this case, of course, is their broker. Their broker didn't communicate to them that the policy they thought they got, they really got. And that was the problem here. And they sued the broker. And they got money from the broker. They settled with the broker. Of course, the entire basis of that lawsuit is there wasn't coverage, so you owe us money. Now they're coming back in here and saying, eh, forget what we said to the broker. There really was coverage all along. We think that's an inconsistent position, Your Honors, and we also believe that the substantial compliance, whether this court rules that substantial compliance applies or doesn't apply, should have no effect on the ultimate result here. And I would additionally note that we have exclusion F. Now there's been no case, exclusion F basically says if the aircraft is piloted by a non-designated pilot, there's no coverage. The pilot warranty identifies designated pilots here by qualification rather than name because there aren't named pilots. But again, there's no dispute that Mr. P. Marini did not meet the requirements. So exclusion F also applies, and there's been no case law presented that substantial compliance, the substantial compliance doctrine applies in the context of an exclusion. None whatsoever. So they have two hurdles that they have to get over here, and frankly, Your Honor, I don't think they've overcome either. The Court has any further questions? Yeah. All right. Thank you, Judge. Your Honor, let me be clear that if the Court is inclined to rule in Federal's favor, the Court's making new law here. They're carving out an exception from the general contract law, which says that promissory warranties and our insurance policies in aviation contracts need to be strictly construed. There's no law regarding that anywhere in this Nation, and it goes against the grain of the law in California, and even under the older cases, and it goes in the grain of this Court's decision. There's some concern that the aviation industry has, that if you rule in our favor here, that it's going to create planes to fall out of the sky and all kinds of serious risks to occur. That's not what's at issue in this appeal. The issue is what standard you measure the compliance. Is it a substantial compliance test, or is it an exact, literal requirement test? What's your response to opposing counsel's observation that even if you adopt the In every substantial compliance case, by definition, you're going to have a situation where you did not meet the exact, literal requirements. So there's always going to be a deviation, and every substantial compliance test that occurs, whether it's in the construction industry or whether it's in, you know, the transportation industry or any other place, it says, well, did you meet the essential and necessary benefits under the contract? That's the test that's imposed. All we want is the opportunity to apply that test in our case here. Maybe a jury would find otherwise and rule in their favor, but we want our day in court to be able to present that evidence, particularly here, when you have a policy that does not say if you don't comply with all these exact, literal requirements, then you forfeit coverage. They do that all the time in the insurance industry. They have expressed conditions where they make the sine qua non of any recovery whatsoever. This is a garden variety endorsement that occurs at the end, with evidence that the underwriter said, ah, show me some alternate requirements. And then that got lost in the shuffle and never occurred. But the implication is that they didn't care until the complaint got filed and action occurred and all got lawyered up. Then they say, oh, boy, we have to have all these requirements here. That's how it always is. What about exclusion F? Well, exclusion F is circular. If it were a standalone exclusion, like a pollution exclusion, you have some interesting argument there. The exclusion F says we need to reincorporate what was in the declaration. Declaration, of course, has the warranty. And so then we're back to the same issue about whether there's substantial complaints, there's a warranty. So it rises or falls? It rises or falls on the same issue. And what about opposing counsel's observation that the broker was sued for no coverage and now the assertion is there was coverage? What's your response to that, that that's an inconsistent position? Boy, as I'm sure you know from litigation, we get to plead all kinds of inconsistent positions against multiple parties all the time. But it's an either-or proposition. So the suits that we have against the broker are conditioned upon one position or another, and then they settle based on the relative merits of those. But it's not at issue. In fact, it's not even in the record here, and I'm surprised counsel brought that up as no basis in this Court's decision on it. All right. Thank you, counsel. Thank you to both counsel. The cases are being submitted for decision. All cases for today are submitted for decision, and this Court is adjourned. Thank you.
judges: Aldrich, Bennett, Goodwin